*728 OPINION.
MoRRis:
The petitioner contends that in determining the value of the leasehold for depletion purposes there should be included in the future estimated profits the anticipated profits from the commissary. Its argument is based on the fact that the conducting of a mercantile business was a necessary incident of its mining operations *729 and customary for the coal mining industry to maintain such stores in order to hold the men in their employment. The commissary business was profitable for the petitioner and undoubtedly necessary in the operation of its mine. Such considerations, however, are not determinative of the question involved.
Section 234 (a) (9) of the Revenue Act of 1918 provides, “ In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer’s interest therein) on that date shall be taken in lieu of cost up to that date: * * * ”
The only value upon which depletion is allowable is the value of the mineral deposit in the ground at the basic date. The right to operate a commissary is not such an asset as is subject to a depletion allowance. Whatever value that right may have therefore can not be taken into consideration in determining the value of the petitioner’s property for depletion purposes. The action of the respondent in eliminating from the estimate of future expected profits to be derived from the leasehold’s certain expected future profits from the commissary, was correct.
The second contention raised by the petitioner is that the respondent undervalued its leasehold interest for depletion purposes, although the commissary right may not be included therein, in that certain expenses were charged to coal which were attributable to the commissary, thereby decreasing the profits from the mining of coal and reducing the March 1, 1913, value based on anticipated profits. We are satisfied from the evidence that the expenses for the period 1909 to 1915, used by the respondent in the ascertainment of profits, on which the March 1, 1913, value was based, erroneously included charges against the cost of production of coal which were attributable to the commissary. The commissary accounts were kept separate on the books of the company but only showed such expenses as cost of goods, freight and salaries of commissary employees. Ro charge was made for taxes, insurance, officers’ salaries, directors’ fees, and other overhead expenses which were all charged against the mining and selling of coal. In our opinion, a reasonable apportionment of the officers’ salaries and taxes for the years 1909 to 1915 is one-third to the commissary and two-thirds to the mining of coal. As all of these expenses Avere charged against the mining of coal, the profits from that branch of the business from 1909 to 1915 should be recomputed *730 by eliminating therefrom one-third of the officers’ salaries and taxes, as set forth in the findings of fact. In addition, there should be deducted from the expenses of mining coal, $800 for heating the commissary buildings for each of the years 1911 to 1915, inclusive. The March 1, 1913, value of the property for depletion purposes should then be computed by the same method as that employed by the respondent, and not controverted by petitioner.

Judgment will be entered on 15 days’ notice, under Rule 50.

Considered by Trammell and Littleton.